# No. 13-35163

IN THE

## United States Court of Appeals
## For the Ninth Circuit

❖

CHMM, LLC,

*Plaintiff-Appellant*,

—against—

FREEMAN MARINE EQUIPMENT, INC.,

*Defendant-Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF OREGON

## PLAINTIFF-APPELLANT'S OPENING BRIEF

ANTHONY J. PRUZINSKY
BRIAN P. R. EISENHOWER
HILL RIVKINS LLP
45 Broadway, Suite 1500
New York, New York 10006
(212) 669-0600
*Attorneys for Plaintiff-Appellant*
*CHMM, LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel of record for Plaintiff-Appellant CHMM, LLC certifies that Plaintiff-Appellant has no corporate ownership.

<u>s/ Anthony J. Pruzinsky</u>
Anthony J. Pruzinsky
Attorney for Plaintiff-Appellant
CHMM, LLC
Dated: August 15, 2013

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................... iii

PRELIMINARY STATEMENT ............................................... 1

JURISDICTIONAL STATEMENT ......................................... 3

STATEMENT OF ISSUES PRESENTED FOR REVIEW .................. 4

STATEMENT OF THE CASE ............................................... 4

STATEMENT OF THE FACTS .............................................. 6

SUMMARY OF THE ARGUMENT ...................................... 9

STANDARD OF REVIEW .................................................. 11

ARGUMENT ............................................................. 11

    POINT I:  THE DISTRICT COURT ERRED IN
    FAILING TO COMPLY WITH THE APPLICABLE
    PROCEDURAL STANDARDS IN CONSIDERING
    THE MOTION TO DISMISS.  ...................................... 11

        A.  The District Court Erred in Refusing to Accept
        as True CHMM's Allegations of Material Fact and
        to Construe those Allegations in the Light Most
        Favorable to CHMM.  ............................................ 12

        B.  The District Court Engaged in Impermissible
        Fact Finding based upon Materials Placed Before it
        and Unsubstantiated Arguments, and Treated those
        Findings as if they were Undisputed Facts.  ........................... 18

    POINT II:  THE DISTRICT COURT ERRED IN
    DISMISSING CHMM'S TORT CLAIMS AT THE
    PLEADINGS STAGE, GIVEN THAT THERE IS NO
    DECISION OF THE SUPREME COURT, NINTH
    CIRCUIT, OR ANY OTHER COURT HOLDING
    THAT TORT RECOVERY IS NOT AVAILABLE

i

FOR PROPERTY PLACED ON BOARD A VESSEL
BY A PURCHASER BEFORE ITS DELIVERY DATE. .........  22

    A.    In <u>Saratoga Fishing</u>, the Supreme Court Confirmed
          the Relevant Product is that which is Supplied
          by the Manufacturer. ...............................................  28

    B.    No Court has Held that Recovery is Unavailable
          for Property Added by a Purchaser to a Vessel
          Before its Delivery Date .........................................  33

    C.    Deciding What Constitutes the Relevant Product
          Requires a Factual Determination Precluding Dismissal
          at the Pleadings Stage ............................................  41

    D.    Dismissal was Inappropriate in View of Relevant Questions
          Left Open by the Supreme Court. .........................  45

CONCLUSION ....................................................................  46

STATEMENT OF RELATED CASES .................................  48

CERTIFICATE OF COMPLIANCE ....................................  49

CERTIFICATE OF SERVICE ..............................................  50

# TABLE OF AUTHORITIES

**Cases** **Page**

All Alaskan Seafoods, Inc. v. Raychem Corp.,
197 F.3d 992 (9th Cir. 1999)……………………………….. 29, 35, 45

Barker v. Riverside County Office of Educ.,
584 F.3d 821(9th Cir. 2009)…………………………………… 11

Daniels-Hall v. Nat'l Educ. Ass'n,
629 F.3d 992 (9th Cir. 2010)………………………………… 13

East River Steamship Corp. v. Transamerica Delaval Inc.,
476 U.S. 858 (1986)…………………………………………… *passim*

Exxon Shipping Company v. Pacific Resources,
835 F.Supp. 1195 (D. Hawai'i 1993)………………………….. 39-40, 41

Giles v. General Motors,
494 F.3d 865 (9th Cir. 2007)………………………………… 25

Manzarek v. St. Paul Fire & Marine Ins. Co.,
519 F.3d 1025 (9th Cir. 2008)………………………………… 13

McKinstry Co. v. Sheet Metal Workers' Intern. Ass'n,
Local Union No. 16, 859 F.2d 1382 (9th Cir. 1988)………….. 11

Petroleum Helicopters, Inc. v. Avco Corp.,
930 F.2d 389 (5th Cir. 1991)………………………………… 38-39, 40

Roberts v. Corrothers, 812 F.2d 1173 (9th Cir. 1987)………….. 13

iii

Saratoga Fishing v. J.M. Martinac & Co.,
520 U.S. 875 (1997)…………................................................. *passim*

Sateriale v. R.J. Reynolds Tobacco Co.,
687 F3d 777 (9th Cir 2012)……………………………………12, 18, 19

Sea-Land Serv., Inc. v. Gen. Elec. Co.,
134 F.3d 149 (3rd Cir. 1998)…………………………………… 38, 39, 40

Shipco 2295, Inc. v. Avondale Shipyards, Inc.,
825 F.2d 925 (5th Cir. 1987)……………………………………….. 36-37

Stacy v. Rederiet Otto Danielsen, A.S.,
609 F.3d 1033 (9th Cir. 2010)…………………………………… 11

U.S. v. Bear, 439 F.3d 565 (9th Cir. 2006)……………………… 11

Warren v. Fox Family Worldwide Inc.,
328 F.3d 1136 (9th Cir. 2003)…………………………………… 13

Zadrozny v. Bank of New York Mellon,
--- F.3d ---, 2013 WL 3242528 (9th Cir. June 28, 2013)… ……… 11

**Statutes and Rules**

28 U.S.C. §1292(a)(3) …………………………………………….. 3

28 U.S.C. §1333…………………………………………………… 3

Fed. R. App. P. 4(a)………………………………………….…. 3

Fed. R. Civ. P. 9(h)…………………………………………….…... 3

Fed. R. Civ. P. 12(b)(6)……………………………………………… *passim*

## PRELIMINARY STATEMENT

Plaintiff-Appellant, CHMM, LLC ("CHMM"), as owner of the motor yacht Jamaica Bay ("Vessel"), submits its Opening Brief in this maritime interlocutory appeal of the order of the United States District Court for the District of Oregon issued February 7, 2013, (ER 1-3)[1], adopting the Magistrate Judge's Findings and Recommendation ("F&R") issued December 17, 2012, (ER 4-22), regarding the motion to dismiss for failure to state claims upon which relief may be granted, (ER 299-300), over CHMM's Objections, (ER 42-46).  The court construed the motion of Defendant-Appellee, Freeman Marine Equipment, Inc. ("Freeman"), as against the subsequently-filed Amended Complaint, (ER 5, 283-298), and dismissed in their entirety the First through Fifth Claims for negligence and products liability with respect to "damage to property installed on and integrated into the Vessel prior to its delivery by [non-party shipbuilder] Nobiskrug to Plaintiff", (ER 1).

CHMM's claims relate to a purportedly weathertight Freeman door ("Door") which suffered a catastrophic failure in an expectable marine environment, allowing seawater to enter into the interior of the Vessel and causing severe damage to the Interior Outfit and additional property contained within the Vessel. (Am. Compl. ¶¶ 7-10, 19-20, ER 285, 287.)  Importantly, the Interior Outfit and additional property were added to the Vessel by CHMM, whereas the shipyard sold

---

[1] "ER" refers to the Excerpts of Record.

1

only a "bare ship" to CHMM.  (Am. Compl. ¶¶ 7-10, ER 285; F&R 4, ER 7.)  In other words, the shipbuilder agreed to provide CHMM with a yacht *less* the Interior Outfit, which was the subject of independent contracts between CHMM and third parties.  (Am. Compl. ¶¶ 7-10, ER 285; F&R 4, ER 7; Pruzinsky Decl. ¶¶ 7-9, ER 122; Pruzinsky Decl. Ex. E, F, G, ER 187-279.)  The Amended Complaint sets forth an estimated cost of $18,000,000.00 to repair, replace, and otherwise restore to pre-incident condition the property added to the Vessel by CHMM, which included, among other things, artwork, furniture, and other non-permanent personal property, as well as wood paneling, carpeting, audio visual equipment, and the like.  (Am. Compl. ¶ 10, 20, 29, ER 285, 287, 288.)  CHMM contends that the property it added to the Vessel is "other property" within the meaning of East River Steamship Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 859 (1986), as later explained in Saratoga Fishing v. J.M. Martinac & Co., 520 U.S. 875 (1997), such that tort recovery is available, and the district court erred in dismissing CHMM's claims.  It is submitted that the district court failed to accept as true CHMM's allegations of material fact as required under the standard for consideration of a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, instead engaging in impermissible fact finding.  Further, the dismissal of CHMM's claims at the pleadings stage was unwarranted as there is no decision in the Supreme Court, Ninth Circuit, or any

2

other court holding that tort recovery is not available for property added by a purchaser to a vessel before the date of its final delivery from the shipyard, and indeed, the district court acknowledged that none of the cases cited below stand for that proposition.  (Mot. to Dismiss Hr'g Tr. 21, Nov. 29, 2012, ER 67.)

### JURISDICTIONAL STATEMENT

The statutory basis for subject matter jurisdiction of the district court is 28 U.S.C. § 1333 as this is a case of admiralty and maritime jurisdiction pursuant to Fed. R. Civ. P. 9(h).  (Am. Compl. ¶ 1, ER 284; F&R 2, ER 5.)

This Court has jurisdiction pursuant to 28 U.S.C. §1292(a)(3) as this appeal is properly made as of right from an interlocutory order that decided rights and liabilities of the parties to a maritime action.  This appeal seeks review of the interlocutory order issued February 7, 2013, (ER 1-3), adopting the Magistrate Judge's Findings and Recommendation issued December 17, 2012, (ER 4-22), regarding the motion to dismiss for failure to state claims upon which relief may be granted, (ER 299-300), over CHMM's Objections, (ER 42-46).

CHMM timely filed its notice of appeal on March 5, 2013, (ER 23), within the time period allowed under Rule 4(a) of the Federal Rules of Appellate Procedure. The parties previously submitted briefing on the issue of maritime interlocutory appellate jurisdiction, (docket entries 7-8), in response to which this

Court discharged its *sua sponte* order to show cause why this appeal should not be dismissed for lack of jurisdiction, (docket entries 5, 9).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Did the district court err in failing to accept as true CHMM's allegations of material fact and to construe those allegations in the light most favorable to CHMM in considering the motion to dismiss?

2.     Did the district court engage in impermissible fact finding based upon materials placed before it and treat those findings as if they were undisputed facts in considering the motion to dismiss?

3.     Did the district court err in dismissing CHMM's tort claims at the pleadings stage, given that there is no decision of the Supreme Court, Ninth Circuit, or any other court holding that tort recovery is not available for property placed on board a vessel by a purchaser before its final delivery date?

## STATEMENT OF THE CASE

On August 16, 2012, CHMM filed its complaint alleging negligence and products liability claims for damage to the Vessel's interior spaces and contents resulting from the failure of a purportedly weathertight door manufactured and supplied by Defendant-Appellee Freeman.  (Compl., ER 301-314.)  The claims included negligence (first claim), defect in design (second claim), defect in manufacture (third claim), failure to properly instruct (fourth claim), and negligent

misrepresentation (fifth claim). Further, CHMM filed an Amended Complaint, (ER 283-298), pleading in the alternative an omnibus sixth claim to the extent discovery may reveal warranty and quasi contractual claims in connection with the failure of the door.

CHMM alleged that, among other things, the interior outfitting of the Vessel was property that had been purchased and installed by CHMM for which the non-party shipyard, Nobiskrug, took no responsibility contractually and in its performance under the shipbuilding contract. (Am. Compl. ¶¶ 7-11, ER 285.) Freeman moved for dismissal on September 25, 2012, (ER 299-300), arguing that recovery for damage to property added to the Vessel by CHMM was precluded under the economic loss doctrine set forth in East River Steamship Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 859 (1986), and the Court heard oral argument on November 29, 2012, (Mot. to Dismiss Hr'g Tr., ER 47-119). The Magistrate Judge construed the motion as against the subsequently-filed Amended Complaint, (F&R 2, ER 5), and issued Findings and Recommendation ("F&R") on December 17, 2012, (ER 4-22). CHMM timely filed Objections to the Findings and Recommendation together with the Declaration of James L. Dolan in support of its Objections. (ER 42-46; ER 26-41).

On February 7, 2013, the District Judge issued an order, (ER 1-3), which adopted the Findings and Recommendation and dismissed in their entirety the First

5

through Fifth Claims of the Amended Complaint, (ER 283-298), "for damage to property installed on and integrated into the Vessel prior to its delivery by Nobiskrug to Plaintiff," and dismissed "that portion of the Sixth Claim alleging a breach of contract," (ER 1-2). The order granted CHMM leave to file a Second Amended Complaint seeking tort remedies for damage to property added to the Vessel after the date of delivery from Nobiskrug. (ER 3.) As such, the court below eradicated several of the products liability claims asserted by CHMM against Freeman. The dismissed claims represent the vast majority of CHMM's damages.

## STATEMENT OF THE FACTS

Plaintiff-Appellant CHMM was and is the owner of the M/Y Jamaica Bay ("the Vessel"), a motor yacht built by the German shipyard, Nobiskrug GmbH ("Nobiskrug"), (Am. Compl. ¶ 6, ER 284), which included a purportedly weathertight door manufactured and supplied by Defendant-Appellee Freeman, (Am. Compl. ¶ 14, ER 286).

The Freeman door was a component installed by Nobiskrug on the Vessel's exterior bulkhead near the bow, enabling passage from the exterior deck to the inside cabin. (Am. Compl. ¶ 14, ER 286.) Freeman represented the Door to be of a "weathertight" type of sufficient strength and design to withstand expected forces

typically experienced in a seagoing environment, and suitable for installation at the foredeck of the Jamaica Bay.  (Am. Compl. ¶ 17, ER 286.)

However, on or about November 16, 2011, while the Vessel was underway off the coast of the United States, the Freeman door ("Door") failed in an expectable marine environment, allowing the ingress of a substantial volume of seawater into the Vessel, causing severe damage to its interior spaces and contents, including woodwork, carpeting, electrical wiring and electronics.  (Am. Compl. ¶ 19-20, ER 287.)

This action concerns the damages to the Interior Outfit and additional property added by CHMM to the Vessel, which were estimated to cost $18,000,000.00 to repair, replace and otherwise restore to pre-incident condition. (Am. Compl. ¶ 29, ER 288.)  The vast majority of the property that suffered damage was supplied and placed on board the Vessel by CHMM and its contractors prior to the Vessel's final delivery date.  This property included, among other things, artwork, furniture, and other non-permanent personal property, as well as wood paneling, carpeting, audio visual equipment, and the like.  (Am. Compl. ¶¶ 10, 20, ER 285, 287.)   The electrical wiring and electronics in the accommodation spaces included televisions and audio equipment unrelated to the operation of the ship, (Pruzinsky Decl. Ex. G, ER 232-279), and the furnishings

7

included sofas, loveseats, armchairs, footstools, tables, desks, beds, and electrically operated blinds, (Pruzinsky Decl. Ex. E, F, ER 187-231).

Importantly, the damaged property was not acquired from or through the shipyard, nor was it supplied or installed by the shipyard. The shipbuilding contract between the Nobiskrug shipyard and CHMM provided that CHMM was purchasing an unfurnished and partially outfitted vessel. Specifically, the shipbuilding contract stated that Nobiskrug was only to provide a "bare ship" and further set forth that Nobiskrug would not be responsible for the outfitting of the Vessel's interior. (Am. Compl. ¶¶ 7, 9, ER 285.) Instead, the outfitting of the interior of the yacht was left to CHMM. (Am. Compl. ¶ 8, ER 285.) CHMM outfitted the accommodation and other interior spaces by entering into agreements with third parties that were wholly separate and distinct from the shipbuilding contract and totaled more than $10,000,000.00. (Am. Compl. ¶¶ 7-10, ER 285; F&R 4, ER 7; Pruzinsky Decl. ¶¶ 7-9, ER 122; Pruzinsky Decl. Ex. E, F, G, ER 187-279.) Accordingly, the Vessel, as sold by Nobiskrug under the shipbuilding contract, did not include the interior outfitting and other property added to the Vessel by CHMM prior to its final delivery date. (Declaration of James L. Dolan ¶¶ 9-10, ER 29.)

## SUMMARY OF THE ARGUMENT

The district court failed to accept as true CHMM's allegations of material fact and to construe those allegations in the light most favorable to CHMM, the non-moving party, and therefore failed to comply with the applicable standard for evaluating a Rule 12(b)(6) motion. Further, in refusing to accept CHMM's allegations as true, the district court engaged in impermissible fact finding based upon materials placed before it and upon Freeman's unsubstantiated arguments.

With respect to Freeman's liability for damages, the district court erred in refusing to correctly differentiate between property added to the Vessel by CHMM and the components incorporated into the Vessel by the shipbuilder, thereby misapplying the economic loss rule set forth in <u>East River Steamship Corp. v. Transamerica Delaval Inc.</u>, 476 U.S. 858, 859 (1986), as later explained in <u>Saratoga Fishing v. J.M. Martinac & Co.</u>, 520 U.S. 875 (1997). As the district court acknowledged, there is no decision of the Supreme Court, Ninth Circuit, or any other court holding that tort recovery is not available for property placed on board a vessel by a purchaser before its delivery date. (Mot. to Dismiss Hr'g Tr. 21, Nov. 29, 2012, ER 67.) Nevertheless, at the pleadings stage, the district court arbitrarily drew a bright line between material that CHMM placed on board before the Vessel's final delivery date and material that CHMM placed on board the Vessel after that date. In doing so, the district court failed to analyze the nature

and character of the damaged property and fundamentally deprived CHMM of any opportunity to recover for damage to obvious "other property" within the rule established under <u>East River</u> as interpreted in <u>Saratoga Fishing</u>.  The instant case is not about components installed on board the Vessel by non-party shipbuilder Nobiskrug pursuant to the shipbuilding contract. (ER 124-181.)   Instead, the relevant property was supplied and installed by CHMM through direct agreements with third parties, which were separate and distinct from the shipbuilding contract and totaled more than $10,000,000.00.  (Am. Compl. ¶¶ 7-10, ER 285; F&R 4, ER 7; Pruzinsky Decl. ¶¶ 7-9, ER 122; Pruzinsky Decl. Ex. E, F, G, ER 187-279.) The shipbuilder took no responsibility for that property and expressly contracted to provide only a "bare ship".  (Am. Compl. ¶¶ 7-10, ER 285; Shipbuilding Contract § 1.2, ER 129-130 and § 2.10(a), ER 137.)

Accepting as true the allegations of material fact set forth in the Amended Complaint and construing those facts in the light most favorable to CHMM in accordance with the applicable standard for a Fed. R. Civ. P. 12(b)(6) motion to dismiss, it is clear that the property damaged when the Door failed was not part of the product as manufactured and provided by the shipbuilder, and therefore the economic loss rule does not preclude recovery from Freeman.  Further, in light of the issues of first impression presented by this case with respect to "other property"

in connection with the economic loss rule, the district court should have denied the motion for dismissal at the pleadings stage.

## STANDARD OF REVIEW

A *de novo* standard applies to this Court's review of an order of dismissal for failure to state a claim upon which relief can be granted.  Zadrozny v. Bank of New York Mellon, --- F.3d ---, 2013 WL 3242528, at *2 (9th Cir. June 28, 2013); Stacy v. Rederiet Otto Danielsen, A.S., 609 F.3d 1033, 1035 (9th Cir. 2010) (citing Barker v. Riverside County Office of Educ., 584 F.3d 821, 824 (9th Cir. 2009)). Upon review, this Court will "accept as true all well pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party." Zadrozny, --- F.3d ----, 2013 WL 3242528, at *2 (9th Cir. June 28, 2013) (citing Henry A. v. Wilden, 678 F.3d 991, 998 (9th Cir. 2012) (citation omitted)).

To the extent that this case presents issues of law and contract interpretation, this Court's standard of review is also *de novo*.  McKinstry Co. v. Sheet Metal Workers' Intern. Ass'n, Local Union No. 16, 859 F.2d 1382, 1385 (9th Cir. 1988); see also U.S. v. Bear, 439 F.3d 565, 571 (9th Cir. 2006) (citing U.S. v. Lawton, 193 F.3d 1087, 1094 (9th Cir. 1999)).

## ARGUMENT

## POINT I

### THE DISTRICT COURT ERRED IN FAILING TO COMPLY WITH THE APPLICABLE STANDARDS

11

## IN CONSIDERING THE MOTION TO DISMISS.

The district court failed to comply with the standards applicable to a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The district court declined to accept as true CHMM's allegations of material fact and to construe those allegations in the light most favorable to CHMM, as the non-moving party. Further, the district court engaged in impermissible fact finding based upon materials placed before it and treated those findings as if they were undisputed facts. Both failings amount to reversible error.

### A.   The District Court Erred in Refusing to Accept as True CHMM's Allegations of Material Fact and to Construe those Allegations in the Light Most Favorable to CHMM.

The district court's inappropriate dismissal of CHMM's tort claims stems in large part from its failure to comply with the standard for consideration of a motion pursuant to Fed. R. Civ. P. 12(b)(6), despite having acknowledged the governing standards as follows:

> In order to survive a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 US 544, 570 (2007).
> ...
> In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Sateriale v. R.J. Reynolds Tobacco Co.*, 687 F3d 777, 783 (9th Cir 2012).

(F&R 2-3, ER 5-6.)  Nevertheless, the district court erred by instead employing a standard under which, "[t]he court need not accept as true allegations in the complaint that contradict" other material placed before the court.  (F&R 3, ER 6.) In making this statement, the court relied upon Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  However, the source of that citation to Daniels-Hall comes, in fact, from Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031-1032 (9th Cir. 2008), citing Warren v. Fox Family Worldwide Inc., 328 F.3d 1136, 1139 (9th Cir. 2003), which itself draws upon language in Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987) which more clearly states that the court must accept as true allegations in the complaint "unless controverted by undisputed facts in the record."  Therefore, it is clear the court below misconstrued the rule in the Ninth Circuit that requires the district court on a 12(b)(6) motion to accept as true facts alleged by the plaintiff unless they are contradicted by undisputed facts.

This case contains an enormous number of disputed facts, to the extent that the district court never should have considered dismissal at the pleadings stage. For example, the parties' duties and obligations with respect to the purchase and installation of the door are factual issues obviously requiring discovery to determine what the parties contracted for.  The interpretation of the shipbuilding contract itself necessarily will depend upon factual determinations of what the

parties both intended and actually did in performing under its broad terms. The same can be said of the various Interior Outfit contracts, including but not limited to those before the district court at the motion to dismiss stage. (Pruzinsky Decl. Ex. E, F, G, ER 187-279.)

Central to the district court's dismissal of CHMM's claims based on the economic loss rule of <u>East River Steamship Corp. v. Transamerica Delaval Inc.</u>, 476 U.S. 858, 859 (1986), discussed in Point II below, was its unsubstantiated finding that, "... pursuant to the Shipbuilding Contract, Nobiskrug delivered a completely outfitted and legal vessel, not just a bare hull, to CHMM," (F&R 10-11, ER 13-14). This erroneous finding, adopted over CHMM's objections, (ER 44), is the polar opposite of the allegations set forth in the Amended Complaint quoting the shipbuilding contract as follows:

7.    The Shipbuilding Contract provides as follows:

**2.10 Interior Outfit**

(a)    The Interior Outfit of the Yacht is to be provided by the Purchaser. The Builder does not assume any responsibility or liability with regard to the Interior Outfit, except as provided herein. The interface between the scope of work of the Builder and the Interior Outfit is described in the Interior Outfitting Demarcation List.

8.    The Shipbuilding Contract defines "Interior Outfit" as follows:

**"Interior Outfit"** means the Interior Outfit of the Yacht for which the Purchaser is responsible.

14

9.     The Shipbuilding Contract further provides as follows:

> **"Interior Outfitting Demarcation List"** means the list describing the interface between the bare ship and the Interior Outfit, appended hereto as Schedule 10.

(Am. Compl. ¶¶ 7-9, ER 285; Shipbuilding Contract at 5-6, § 2.10(a)-(b), ER 129-30, 137-38.)   As alleged in the Amended Complaint and plainly stated in the shipbuilding contract, CHMM – not Nobiskrug – was obligated to supply and install the Interior Outfit, (Am. Compl. ¶¶ 7-10, ER 285).   Even consideration of contractual provisions not quoted in the Amended Complaint confirms CHMM's obligations regarding the Interior Outfit, such as the requirement that CHMM ensure the Interior Outfit complied with Classification Society requirements. (Shipbuilding Contract § 2.10(b), ER 137-38.)   Rather than accepting as true CHMM's allegations of material fact as set forth in the Amended Complaint, the district court engaged in a tortured pre-discovery interpretation of the shipbuilding contract provisions urged upon it for the first time at the hearing by Freeman's counsel – misleadingly and without substantiation in the record – to the effect that Nobiskrug was somehow responsible for the Interior Outfit or for ensuring that the electronics and interior furnishing supplied and installed by CHMM's contractors met specifications and complied with flag state requirements.   (Mot. to Dismiss Hr'g Tr. 20-21, 53, ER 66-67, 99.)   Freeman's counsel made these representations despite the plain language of the Shipbuilding Contract setting forth that Nobiskrug

15

was to provide only a "bare ship", that Nobiskrug disclaimed all responsibility for the Interior Outfit, and that CHMM was responsible for installing the Interior Outfit within the construction time frame by using materials and methods consistent with the requirements of the Classification Society and the Flag State. (Am. Compl. ¶¶ 7-9, ER 285; Shipbuilding Contract at 5-6, § 2.10(a)-(b), ER 129-30, 137-38.)  Notably, no evidence of specific flag state or classification society requirements relating to the Interior Outfit was submitted by Freeman.  In this connection, CHMM's counsel repeatedly brought to the district court's attention the fact that Nobiskrug took no responsibility for the Interior Outfit and was to provide only a "bare ship" pursuant to the Shipbuilding Contract, (Mot. to Dismiss Hr'g Tr. 26-27, 44, 54, 60, ER 72-73, 90, 100, 106; Am. Compl. ¶¶ 7-9, ER 285), and reminded the district court about the treatment of factual issues under the applicable standard for a 12(b)(6) motion, (Mot. to Dismiss Hr'g Tr. 5, 24, 26, 31, 32, 39-40, 41, Nov. 29, 2012, ER 51, 70, 72, 77, 78, 85-86, 87).  Accordingly, it was a mistake on the part of the district court to conclude that Nobiskrug was responsible for delivering a fully outfitted vessel, as nothing in the record at the pleadings stage supports that conclusion.  Accepting as true CHMM's allegations of material fact, CHMM asserted proper tort claims seeking recovery of damages to items other than the "bare ship" and its defective Freeman Door.

16

The district court's erroneous finding is further contradicted by the Declaration of James L. Dolan, (ER 26-41), which was submitted in support of CHMM's objections to the Findings and Recommendation.  Mr. Dolan, an expert with respect to classification society matters, reviewed the shipbuilding contract and concluded that the fact that the vessel was subject to a sea trial and class rules did not enlarge any commercial obligation of Nobiskrug to supply a "bare ship" or otherwise support the finding that Nobiskrug had a contractual obligation to deliver a completely outfitted vessel.  (Dolan Decl. ¶¶ 8-10, ER 28-29; F&R 10-11, ER 13-14.)  Specifically, Mr. Dolan stated that:

> Nobiskrug had no contractual obligation to ensure that any of the Interior Outfit was compliant with Class Rules; instead, this was CHMM's obligation.  A sea trial before delivery has no relevance to the interior outfitting of the vessel or the contractual undertakings relating thereto.

(Dolan Decl. ¶ 10, ER 29.)  Mr. Dolan further stated that CHMM's obligation to furnish Nobiskrug "with all documentation related to the Interior Outfit which is needed for Classification of the Yacht," (Shipbuilding Contract § 2.10(c), ER 138), reflected only a ministerial act on the part of Nobiskrug to collect the relevant documentation or approvals for those items that might be covered by a class rule.  (Dolan Decl. ¶ 8, ER 28.)

In this connection, the district court's reading of the shipbuilding contract provisions relating to the obligations of <u>CHMM</u> – not Nobiskrug – to outfit the

interior by using materials and methods consistent with the requirements of the Classification Society and the Flag State, (Shipbuilding Contract §2.10(b), ER 137-38), relied largely on Freeman's illogical and unsupported pre-discovery interpretation of the shipbuilding contract. This most certainly was a highly disputed area which required the district court to hold firm to its obligation to accept as true CHMM's allegations of material fact and to construe those allegations in the light most favorable to the plaintiff. See Sateriale v. R.J. Reynolds Tobacco Co., 687 F.3d 777, 783 (9th Cir. 2012).

There can be no question that the district court erred in adopting a strained and disputed interpretation of Nobiskrug's performance under the shipbuilding contract rather than accepting as true the plain language of the provisions set forth in the Amended Complaint by non-moving party CHMM. This error is critical to the extent that it formed the basis for the district court's finding as to the relevant product delivered by the shipbuilder, leading to a determination that CHMM is precluded from pursuing damages on the order of $18,000,000.00 in connection with property purchased, supplied, and installed by CHMM through direct agreements with third party contractors.

**B.    The District Court Engaged in Impermissible Fact Finding based upon Materials Placed Before it and Unsubstantiated Arguments, and Treated those Findings as if they were Undisputed Facts.**

18

Further, the district court made impermissible factual findings based upon materials and arguments placed before it with no substantiation in the record, and erroneously treated those findings as if they were undisputed facts.

In addition to the key finding discussed in Point I(A) above, there are several examples of the district court's engagement in impermissible fact finding rather than complying with the applicable standard requiring it to accept as true the plaintiff's allegations of material fact and to construe those allegations in the light most favorable to the plaintiff.  See Sateriale v. R.J. Reynolds Tobacco Co., 687 F.3d 777, 783 (9th Cir. 2012).  For example, over CHMM's objection, (ER 45), the district court found as follows:

> Freeman's duty to supply the door arose solely pursuant to a subcontract with Nobiskrug in accordance with the requirements of the Shipbuilding Contract.  The presence of its representative during installation was merely to ensure that installation occurred in accordance with that contractual duty.

(F&R 15, ER 18.)  However, there is no basis in the record for this statement.  Freeman's contract with Nobiskrug was not even before the court on the motion to dismiss.  Further, in alleging that one or more Freeman representatives assisted at the shipyard in connection with problems experienced in the installation and testing of Freeman doors on board the Vessel, CHMM did not allege that Freeman attended pursuant to any contractual duty or even as a matter of course, (Am. Compl. ¶¶ 16, 38-39, 74, ER 286, 289, 294).  CHMM alleged that Freeman

19

attended the Vessel in response to a problem, (Am. Compl. ¶ 11, ER 303), not "merely to ensure" the installation went smoothly, (F&R 15, ER 18). The district court employed its unsupported finding in its dismissal of CHMM's tort claims. (F&R 15, ER 18.)

Likewise, to the extent that the district court treated the Shipbuilding Contract and the contracts for the Interior Outfit as "coordinated transactions", (F&R 8, 14, ER 11, 17), that must be disregarded as an impermissible finding of fact. There was no undisputed evidence of "coordinated transactions" as there was no evidence before the court as to how CHMM and Nobiskrug conducted their business. In this connection, the court below misconstrued its obligations in considering a 12(b)(6) motion to dismiss by expanding the scope of contract interpretation to include fact finding at the pleadings stage. Indeed, it is obvious that there was not a series of coordinated transactions leading to assembly of a fully outfitted yacht by Nobiskrug as the court below erroneously found, (F&R 10-11, ER 13-14), as evidenced by the tremendous amount of supplemental material submitted regarding the provision and installation of the Interior Outfit by CHMM's third party vendors. (Pruzinsky Decl. Ex. E, F, G, ER 187-279.)

Perhaps the most glaring example of impermissible and erroneous fact finding is the district court's statement that, "... At this juncture, CHMM does not know whether Freeman manufactured the door ..." (F&R 7 n.4, ER 10.) There is

absolutely no basis in the record for this statement, which is entirely inaccurate. In fact, CHMM expressly alleged that Freeman manufactured the Door. (Am. Compl. ¶ 14, ER 286.) Further, Freeman has not even argued that it was not the manufacturer of the Door. CHMM timely objected to this finding, (ER 43), and brought the foregoing points to the attention of the court in its accompanying memorandum of law. Moreover, in its Response to CHMM's Objections, Freeman stated that it was unaware of anything disputing the fact that it manufactured the Door, and even admitted for purposes of the motion that it manufactured the Door. (Def.'s Resp. to Pl.'s Objections 25, d.e. 34.) This particular finding is troubling inasmuch as it suggests that the district court dismissed at the pleadings stage CHMM's claims on the order of $18,000,000.00 without careful consideration of the facts as plainly alleged and without adherence to the standards for a motion to dismiss.

Accordingly, disregarding the district court's impermissible fact finding, accepting as true CHMM's allegations of material fact, and construing those allegations in the light most favorable to non-movant CHMM, as the Court must in reviewing *de novo* a dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the relevant product manufactured and sold by the shipyard was a "bare ship" and damage was sustained to "other property" added by CHMM for which tort recovery is permitted, as discussed in Point II below. Therefore, it is respectfully submitted

21

that this Court needs to reverse the district court's order, reinstate CHMM's dismissed tort claims, and remand for further proceedings on the merits.

## POINT II

### THE DISTRICT COURT ERRED IN DISMISSING CHMM'S TORT CLAIMS AT THE PLEADINGS STAGE, GIVEN THAT THERE IS NO DECISION OF THE SUPREME COURT, NINTH CIRCUIT, OR ANY OTHER COURT HOLDING THAT TORT RECOVERY IS NOT AVAILABLE FOR PROPERTY PLACED ON BOARD A VESSEL BY A PURCHASER BEFORE ITS DELIVERY DATE.

Even if the district court complied with the applicable procedural standards, which is denied, the court erred in dismissing CHMM's negligence and products liability claims against Freeman at the pleadings stage. (ER 1-3.) There is no decision in the Supreme Court, Ninth Circuit, or any other court holding that tort recovery is not available for property added by a purchaser to a vessel before its delivery date. Indeed, in addressing Freeman's counsel during oral argument, the district court recognized that none of the cited cases stand for that proposition:

> THE COURT: ...
>
> It looks like all the cases that you cite in support do involve after-added property, but none of them specifically state the rule, do they, quite in the way that you're stating it now.
>
> There's just -- there just wasn't an issue in those cases, I believe, and -- as to whether it was after-added or added prior to completion.

(Mot. to Dismiss Hr'g Tr. 21, Nov. 29, 2012, ER 67.)

22

Nevertheless, at the pleadings stage, the district court, without any supporting authority, arbitrarily drew a bright line between material that CHMM placed on board before the Vessel's final delivery date and material that CHMM placed on board the Vessel after that date. In doing so, the district court failed to analyze the nature and character of the damaged property and fundamentally deprived CHMM of any opportunity to recover for damage to obvious "other property" within the economic loss rule established under East River Steamship Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 859 (1986), as later explained in Saratoga Fishing v. J.M. Martinac & Co., 520 U.S. 875 (1997).

In East River, the Supreme Court recognized products liability, including strict liability in tort, as part of the general maritime law. 476 U.S. at 865. The general maritime law, which is drawn from state and federal sources, is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules. Id. at 865 (citing Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630 (1959); Romero v. International Operating Co., 358 U.S. 354, 373–375 (1959)).

In East River, a shipbuilder engaged defendant Transamerica Delaval to design, manufacture, and supply steam turbines to be used as the main propulsion for four tank vessels. 476 U.S. at 859. Defective components of the steam turbines caused damage to the turbines themselves, but no property other than the

23

steam turbines was damaged.  476 U.S. at 860-61.  East River Steamship Corporation, the bareboat charterers of the vessels, sought to recover repair costs and lost profits from Transamerica Delaval for the time period during which the vessels could not trade.  The Supreme Court held that, "… a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself."  East River, 476 U.S. at 871.  The East River court found that each turbine was the relevant "product", because each turbine, including all component parts, was supplied by Transamerica Delaval as a complete unit for installation on the respective vessels.  East River, 476 U.S. at 867.  The Supreme Court endorsed the reasoning that all but the simplest machines have component parts, and therefore a contrary holding would eliminate the distinction between warranty and strict products liability.  Id.  The court went on to state that:

> Damage to a product itself is most naturally understood as a warranty claim. Such damage means simply that the product has not met the customer's expectations, or, in other words, that the customer has received "insufficient product value."  The maintenance of product value and quality is precisely the purpose of express and implied warranties. Therefore, a claim of a nonworking product can be brought as a breach-of-warranty action.

Id. at 872 (citations omitted).

The rule of East River has come to be known as the "economic loss doctrine", applicable to cases in which no person or property other than the product

24

itself is damaged.   East River, 476 U.S. at 870.   The Court has outlined the economic loss rule as follows:

> The economic loss doctrine in product liability cases can be easily stated.   If a plaintiff is in a contractual relationship with the manufacturer of a product, the plaintiff can sue in contract for the normal panoply of contract damages, including foreseeable lost profits and other economic losses.   Whether or not the plaintiff is in a contractual relationship with the manufacturer, the plaintiff can sue the manufacturer in tort only for damages resulting from physical injury to persons or to property other than the product itself.

Giles v. General Motors, 494 F.3d 865, 874 (9th Cir. 2007).

There is qualitatively no difference between "other property" introduced to the vessel either before or after the vessel's final delivery date, and no maritime case has allowed recovery to turn on such a fortuity.  Indeed, in Saratoga Fishing v. J.M. Martinac & Co., the Supreme Court refused to permit liability to turn on a similar fortuity, i.e., whether a loss to added equipment occurred before or after a product was re-sold by a purchaser.  See 520 U.S. 875, 881 (1997).  As discussed in Point II(A) below, the focus of Saratoga Fishing was a differentiation between a vessel as purchased from a manufacturer and property added by an initial purchaser, in the context of a subsequent purchaser's rights to tort recovery as against the manufacturer, addressing only the specific factual circumstance before that Court in which the "other property" happened to have been added after manufacture.  520 U.S. 875.  The Supreme Court made clear that there are no

qualifications with respect to the time at which a user adds items to a purchased product when it stated:

> Regardless, the case law does suggest a distinction between the components <u>added to a product by a manufacturer</u> before the product's sale to a user, *e.g., Airlift Int'l, Inc. v. McDonnell Douglas Corp.,* 685 F.2d 267 (C.A. 9 1982); *King, supra; Shipco 2295, supra;* <u>and those items added by a user to the manufactured product</u>, *e.g., Nicor Supply Ships Assocs. v. General Motors Corp.,* 876 F.2d 501 (C.A. 5 1989); and we would maintain that distinction.

<u>Saratoga Fishing</u>, 520 U.S. at 884 (emphasis added; citations omitted).  The court below either disregarded or misinterpreted this language as imposing a timetable controlling the definition of property added by a user to a product sold by a manufacturer.  Nothing in the law makes the product delivery date the point for distinguishing between the product itself and property added to it by a purchaser. The proper inquiry is a qualitative determination dependent upon the party that added particular items to a vessel.

In the case at bar, the relevant product covered by the Nobiskrug contract is the "bare ship", of which the defective Freeman Door is a component.  (Am. Compl. ¶¶ 7-9, 13-15, ER 285-86.)  Consistent with the economic loss doctrine, CHMM does not seek to recover for damage to other parts of the "bare ship" caused by the failure of the Freeman door, but rather for damage to items added by CHMM to the product that Nobiskrug manufactured and sold.  Nobiskrug contracted to manufacture a "bare ship" whereas CHMM was left to outfit the

26

interior.  (Am. Compl. ¶¶ 7-9, ER 285.)  The furnishings that comprise the Interior Outfit were purchased and installed aboard the vessel at no risk or liability to manufacturer Nobiskrug in separate and distinct transactions between CHMM and third party vendors.  (Am. Compl. ¶¶ 7-10, 20, ER 285, 287; F&R 4, ER 7; Pruzinsky Decl. ¶¶ 7-9, ER 122; Pruzinsky Decl. Ex. E, F, G, ER 187-279.) However, the district court improperly concluded, without any factual basis or legal authority whatsoever, that this property became part of the "product" because it was added before the final delivery date of the vessel, stating that "… Nobiskrug delivered a completely outfitted and legal Vessel, not just a bare hull, to CHMM." (F&R 4, 10-11, 14, ER 7, 13-14, 17).  The district court misapplied Saratoga Fishing, particularly the language that it is "… the vessel – as placed in the stream of commerce by the manufacturer and its distributors," (F&R 9, ER 12), in holding that the relevant defective product includes both the "bare ship" and all property placed on board by CHMM as of the date of delivery by the shipyard.  Saratoga Fishing did not provide any bright line rule that would obviate consideration of CHMM's contract for a "bare ship" as its initial purchaser, (Am. Compl. ¶¶ 7-9, ER 285).  The failure of the Freeman Door caused harm to the Interior Outfit, which is separate and distinct from the "bare ship" manufactured by Nobiskrug. (Am. Compl. ¶¶ 7-10, ER 285.)  The Interior Outfit constitutes "other property" for

27

which CHMM has a right of recovery under <u>East River</u>, 476 U.S. 858 (1986), and

the general maritime law.

**A.    In <u>Saratoga Fishing</u>, the Supreme Court Confirmed the Relevant Product is that which is Supplied by the Manufacturer.**

The Supreme Court's last word on the economic loss rule in the context of

maritime tort liability is <u>Saratoga Fishing v. J.M. Martinac & Co.</u>, 520 U.S. 875

(1997).  Although <u>Saratoga Fishing</u> sheds some light on the economic loss rule, its

holding is not directly applicable to the present case, as the issue addressed by the

Supreme Court was the determination of a subsequent purchaser's rights to tort

recovery as against a manufacturer, whereas CHMM is an initial purchaser.  The

<u>Saratoga Fishing</u> court made clear that the rule it was fashioning for matters

involving re-sale does not alter the fundamental rule set forth in <u>East River</u>, 476

U.S. 858 (1986), governing the rights of an initial purchaser:

> Our holding here, however, does not affect [the <u>East River</u>] rule, for
> the relevant relations among initial users, manufacturers, and
> component suppliers are typically different from those at issue here.
> Initial users when they buy, typically depend upon, and likely seek
> warranties that depend upon, a manufacturer's primary business skill,
> namely, the assembly of workable product components into a
> marketable whole.

<u>Saratoga Fishing</u>, 520 U.S. at 883-84 (citations omitted).  In the case at hand,

however, Nobiskrug did not assemble the "bare ship" it contracted to provide and

the Interior Outfit into an integrated marketable whole.  Instead, CHMM separately

28

contracted with third parties to supply and install the Interior Outfit, and further placed additional property on board the Vessel. (Am. Compl. ¶¶ 7-10, 20, ER 285, 287; F&R 4, ER 7; Pruzinsky Decl. ¶¶ 7-9, ER 122; Pruzinsky Decl. Ex. E, F, G, ER 187-279.) Saratoga Fishing does not alter East River or otherwise foreclose recovery for "other property" that is not considered part of the "product" or an initial purchaser's bargain with a manufacturer. In All Alaskan Seafoods, Inc. v. Raychem Corp., the Court discussed Saratoga Fishing as follows:

> [T]he Court retained the distinction between components incorporated by a manufacturer before sale to an initial user and those items added by a user of the manufactured product.

197 F.3d 992, 994 (9th Cir. 1999). Accordingly, neither the Supreme Court nor this Court has placed any restriction for recovery in tort based on the time at which items are added to a manufactured product by a purchaser in CHMM's position. In the present case, the Interior Outfit was specifically excluded from the Nobiskrug shipbuilding contract. (Am. Compl. ¶¶ 7-9, ER 285.) Therefore, the defective product is the "bare ship" incorporating the Freeman Door while the Interior Outfit is "other property" for which recovery is permitted.

To the extent that the focus of Saratoga Fishing was a differentiation between a vessel as purchased from a manufacturer and property added by an initial purchaser, in the context of a subsequent purchaser's rights to tort recovery as against the manufacturer, the court sought to fix the period of time from which

the product was to be defined under the specific facts of that case. After doing so, the Supreme Court then considered what other property was added to the vessel by the initial purchaser for which a subsequent purchaser could recover for damage consistent with the economic loss doctrine. Considering the specific items of property in <u>Saratoga Fishing</u>, the Supreme Court determined that the hydraulic system, which caught fire and caused the vessel to sink, was part of the product itself because it was sold by the manufacturer to the initial purchaser as part of the vessel. Accordingly, the Supreme Court allowed recovery by the subsequent purchaser for "other property" that was added by the initial purchaser to the vessel sold by the manufacturer. 520 U.S. at 885. The "original ship" with the defective hydraulic system constituted the product, and the added equipment – a skiff, fishing net and spare parts – were "other property" for purposes of the economic loss rule. <u>Id.</u>

In essence, the relevant "product" under <u>Saratoga Fishing</u> is that which was built or supplied by the manufacturer. In considering the issue, the Supreme Court stated that:

> In this case all agree that the "product itself" consists *at least* of a ship as built and outfitted by its original manufacturer and sold to an initial user.

520 U.S. at 877 (emphasis in original). Based on the agreement between the parties – the Supreme Court then framed the issue:

30

> This case asks how this corner of tort law treats the physical destruction of extra equipment (a skiff, a fishing net, spare parts) added by the initial user after the first sale and then resold as part of the ship when the ship is later resold to a subsequent user. Is that added equipment part of the "product itself," in which case the plaintiff cannot recover in tort for its physical loss? Or is it "other property," in which case the plaintiff can recover? We conclude that it is other property.

520 U.S. at 877.

There is qualitatively no difference between "other property" introduced to the vessel by the purchaser before the vessel's final delivery date, and that installed by the purchaser afterward. The Supreme Court in <u>Saratoga Fishing</u> made clear that the key consideration is whether the items are added by a manufacturer or by a user. The Supreme Court did not create a rule that "other property" necessarily must be added after final delivery of the product. Rather, addressing only a specific factual circumstance in which the "other property" happened to have been added after manufacture, the Court stated:

> Regardless, the case law does suggest a distinction between the components <u>added to a product by a manufacturer</u> before the product's sale to a user, *e.g., Airlift Int'l, Inc. v. McDonnell Douglas Corp.,* 685 F.2d 267 (C.A. 9 1982); *King, supra; Shipco 2295, supra;* <u>and those items added by a user to the manufactured product</u>, *e.g., Nicor Supply Ships Assocs. v. General Motors Corp.,* 876 F.2d 501 (C.A. 5 1989); and we would maintain that distinction.

31

<u>Saratoga Fishing</u>, 520 U.S. at 884 (emphasis added). With respect to determining the relevant product as compared to "other property", it is not a question of timing, it is a question of what the manufacturer is selling. In this connection, the Supreme Court stated:

> When a manufacturer places an item in the stream of commerce by selling it to an Initial User, that item is the 'product itself' under *East River*. Items added to the product by the Initial User are therefore "other property," …

<u>Saratoga Fishing</u>, 520 U.S. at 879. In the case at hand, as expressly stated in the shipbuilding contract, the shipyard built and sold a "bare ship" to CHMM. (Am. Compl. ¶¶ 7-9, ER 285; Shipbuilding Contract at 5-6, § 2.10(a)-(b), ER 129-30, 137-38.) By contrast, the furnishings that comprise the Interior Outfit were purchased and installed aboard the vessel at no risk to manufacturer Nobiskrug in separate and distinct transactions between CHMM and third party vendors. (Am. Compl. ¶¶ 7-10, 20, ER 285, 287; F&R 4, ER 7; Pruzinsky Decl. ¶¶ 7-9, ER 122; Pruzinsky Decl. Ex. E, F, G, ER 187-279.) Accordingly, it is clear that the "bare ship" is the "product itself" under <u>East River</u>. See <u>Saratoga Fishing</u>, 520 U.S. at 879. Therefore, the Interior Outfit and other items added by CHMM are "other property" for which tort recovery is permitted.

CHMM's claims in this case are fully consistent with the Supreme Court's holding in <u>Saratoga Fishing</u>. Like Marco Seattle Inc., the manufacturer in <u>Saratoga</u>

32

<u>Fishing</u> who installed the defective hydraulic system on board the vessel, Nobiskrug in the present matter installed the allegedly defective Freeman Door as a component part of the "bare ship" it sold to CHMM.  Just as Marco Seattle Inc. did not supply or install the skiff, fishing net, and spare parts that the Supreme Court determined to be "other property", Nobiskrug did not supply or install furnishings that comprised the Interior Outfit for which recovery is sought.  The above-quoted language from <u>Saratoga Fishing</u> makes clear that the product is the "... ship as built and outfitted by its original manufacturer ..."  520 U.S. at 877. Here, it is undisputed that original manufacturer Nobiskrug did not build or outfit the interior of the Jamaica Bay, and as such the Interior Outfit is not part of the product but instead constitutes "other property" for which maritime tort recovery is available.

**B.    No Court Has Held that Recovery is Unavailable for Property Added by a Purchaser to a Vessel Before its Delivery Date.**

There is no decision in the Supreme Court, Ninth Circuit, or any other court holding that tort recovery is not available for property added by a purchaser to a vessel before its delivery date.  Indeed, and as noted above, the district court recognized during oral argument that none of the cases cited on the motion stand for that proposition.  (Mot. to Dismiss Hr'g Tr. 21, Nov. 29, 2012, ER 67.)  That obviously is due to the fact that <u>Saratoga Fishing</u> did not create a bright line rule that tort recovery is available only for property added to a vessel by a purchaser

33

after its delivery date, but not for property added to a vessel by a purchaser before its delivery date. Such a rule would be odd indeed as recovery would depend upon a date that often changes during construction due to delays that a party in CHMM's position cannot anticipate at the time of contract and warranty negotiations. In Saratoga Fishing, the Supreme Court refused to allow recovery to turn on a similar fortuity, i.e., whether a loss to added equipment occurred before or after a product was re-sold by a purchaser. See 520 U.S. at 881. In this connection, there is qualitatively no difference between "other property" introduced to the vessel either before or after the vessel's delivery date.

The district court based its dismissal of CHMM's claims on a number of inapposite cases in which the issue was whether a defective part was the relevant product or merely a component of the relevant product. Here, CHMM does not dispute that the defective Freeman Door was a component of the relevant product. (Am. Compl. ¶¶ 14-15, ER 286; Mot. to Dismiss Hr'g Tr. 11, 33, Nov. 29, 2012, ER 57, 79.) The issue at hand is instead whether the property added by CHMM which sustained damage, including but not limited to the Interior Outfit, is part of the relevant product. As a result, the cases cited by the district court are not on point, and further many of them predate Saratoga Fishing, 520 U.S. 875 (1997), the Supreme Court's last word on products liability.

34

In <u>All Alaskan Seafoods, Inc. v. Raychem Corp.</u>, 197 F.3d 992, 993-94, 996 (9th Cir. 1999), the issue was whether an off-the-shelf heating cable and end cap, alleged to have caused a fire that resulted in substantial damage to a vessel, were part of the relevant product given that they were added to the vessel by All Alaskan Seafoods, Inc. ("All Alaskan"). All Alaskan purchased the hull of an oil drill ship, then spent over $25,000,000.00 to build a seafood processing factory on the hull for its own use. After operating the ship for five years, All Alaskan transferred the vessel to another entity, and the fire subsequently occurred. The Court concluded that the relevant products for purposes of the economic loss rule were the heating cable and end cap purchased separately from the hull by All Alaskan. The Court reasoned that All Alaskan was not a commercial manufacturer or seller of vessels of this type, and therefore the subsequent transfer of the vessel to another entity did not mean that the entire refurbished vessel became the relevant product. Clearly, <u>All Alaskan</u> is factually distinguishable from the case at hand and involved very different issues. However, to the extent applicable to the issues before this Court, <u>All Alaskan</u> teaches that material purchased separately from a vessel does not necessarily become part of the vessel for purposes of determining the relevant product under the economic loss doctrine. Here, the Interior Outfit, purchased separately from the "bare ship" by CHMM, is not part of the "bare ship" that is the relevant product under the economic loss doctrine.

35

Similarly, the issue in <u>Shipco 2295, Inc. v. Avondale Shipyards, Inc.</u>, 825 F.2d 925 (5th Cir. 1987), was whether a defective component of a vessel would be considered the relevant product for purposes of the economic loss rule, in the context of an action against the shipbuilder and the party which designed and supplied the defective steering system to the shipbuilder.  In <u>Shipco</u>, the Avondale shipyard:

> … designed, assembled and constructed the vessel hull and all vessel systems relevant to this litigation except the steering system, which was designed by AEG.  Avondale purchased the steering design from AEG, assembled the AEG designed system and incorporated it into the vessels.

825 F.2d at 926.  Various problems with the vessel(s) resulted in structural hull fractures, damaged propellers and damaged steering systems.  <u>Id.</u>  The <u>Shipco</u> court concluded that the damage to the other vessel components did not constitute "other property".  <u>Id.</u> at 929.  In arriving at that conclusion, the court stated:

> We reasoned that as to Avondale, which assembled the entire vessel, the "product" was the finished vessel rather than the component parts of the vessel. …

<u>Id.</u> at 929.  The <u>Shipco</u> court further stated:

> The completed vessels were obviously the objects of the contract. *Shipco did not bargain separately for individual components of each vessel.* We are persuaded that those same vessels that were the object of the contract must be considered "the product" rather than the individual components that make up the vessels.

36

825 F.2d at 928 (emphasis added).  As set forth in CHMM's Objections to the Findings and Recommendation, (ER 44), the district court below cited the above passage, (F&R 9, ER 12), but omitted critical language that is necessary to an understanding of the Fifth Circuit's holding and is highly relevant given that CHMM separately negotiated for the Interior Outfit.  The holding of <u>Shipco</u> is not that the completed vessel is necessarily the relevant product in a maritime products liability action, but rather that the relevant product consists of the vessel as bargained for by the owner and as sold by the manufacturer.  If a component of the item sold by the manufacturer causes damage only to other parts of that item, the economic loss rule bars tort recovery.  However, again, the issue at bar is not whether the defective Freeman Door is part of the relevant product sold to CHMM by Nobiskrug, and as such <u>Shipco</u> is not on point to what is under consideration here.  Further, even if <u>Shipco</u>'s holding encompassed the present case, unlike Avondale, Nobiskrug did not sell or assemble a completed vessel.  (Am. Compl. ¶¶ 7-9, ER 285.)  Whereas plaintiff Shipco "did not bargain separately for individual components of each vessel", 825 F.2d at 928, CHMM contracted separately with third parties for the supply and installation of the Interior Outfit, (Am. Compl. ¶¶ 7-10, ER 285; F&R 4, ER 7).  Therefore, consistent with <u>Shipco</u>, the relevant product in the present case is the "bare ship" sold to CHMM, including the defective Freeman Door that was incorporated into the "bare ship" by Nobiskrug.

(Am. Compl. ¶¶ 7-9, ER 285.)  The property damaged, however, consists entirely of items for which CHMM contracted separately with third-party vendors.

The district court also relied upon Sea-Land Serv., Inc. v. Gen. Elec. Co., 134 F.3d 149 (3rd Cir. 1998), (F&R 9, ER 12), which is inapposite because the issue was whether a defective replacement part or the diesel engine it damaged was the relevant product for purposes of the economic loss rule.  The Sea-Land court concluded that the relevant product was the entire engine, reasoning that parties contemplate that certain engine components will require periodic replacement and that there is no reason that recovery should depend on whether the defective product was original to the engine or instead a replacement for an original component.  134 F. 3d at 154-55.  Clearly, the replacement parts issue addressed by the Sea-Land court has no application to the present case.  Sea-Land is further distinguishable in that the same party manufactured both the original engine and the replacement part, whereas in the present matter, the property added by CHMM to the Vessel was obtained from third parties rather than Nobiskrug, the original manufacturer of the "bare ship".

Petroleum Helicopters, Inc. v. Avco Corp., 930 F.2d 389 (5th Cir. 1991), as cited below, involved an issue similar to replacement parts.  In Petroleum Helicopters, the plaintiff purchased a number of helicopters as complete units, which included as component parts certain emergency flotation devices ("floats").

930 F.2d at 389-90.   The plaintiff routinely switched the floats between helicopters.  Id. at 390.  One float malfunctioned at a time when it happened to be used on a different helicopter than the helicopter with which it was delivered.  Id. Had the float failed while in use on the helicopter with which it had originally been purchased, it was clear that the relevant product would have been the helicopter and tort recovery for damage to the helicopter itself would be barred under the economic loss rule.  However, the issue was whether the plaintiff had any greater right of recovery for damage to a different helicopter after having switched the float from one helicopter to another, and the court affirmed the district court's dismissal.  Id. at 393.  Accordingly, as Petroleum Helicopters addressed a very specific issue arising out of a unique set of facts that bear no similarity to those raised in the present case, its holding has no application here.

The court below relied heavily upon Exxon Shipping Company v. Pacific Resources, 835 F.Supp. 1195 (D. Hawai'i 1993), in erroneously concluding that the Interior Outfit is part of the relevant product in this case.   However, similar to Petroleum Helicopters and Sea-Land, Exxon involves a defective interchangeable part which, as discussed above, is inapposite here.  As the court below stated, Exxon involved a defective chafe chain on a single point mooring ("SPM") which failed, causing a ship to break away from its berth and suffer damage.  (F&R 13, ER 16.)  The chafe chain manufacturer provided one chain to Sofec, the SPM

39

manufacturer, and contracted directly with the buyer of the SPM to provide a second, spare chafe chain.  (F&R 13, ER 16.)  The buyer also provided Sofec with hoses, which Sofec was to assemble with the chain, a buoy, and other components in manufacturing the SPM.  835 F.Supp. at 1197.  The court concluded that the entire SPM was the relevant product, and the fact that the chafe chain which failed may have been the spare purchased directly from the chain manufacturer made no difference.  Id. at 1201.  The court reasoned that, "[a]n integrated product may have any number of components replaced with spare parts in the ordinary course of events."  Id.  As that court noted, this outcome is consistent with Petroleum Helicopters, in which the fact that the defective float had been transferred from another helicopter did not provide the plaintiff with greater rights to tort recovery than it would have had if the float had failed while on the original helicopter.  930 F.2d 389, 393 (5th Cir. 1991).  The present case, however, does not involve replacement parts or interchanged parts, and therefore Exxon is not on point. Although the Exxon district court found that property purchased separately by the plaintiff and integrated by a manufacturer could be part of the relevant product, that is not a point relevant to this case inasmuch as Nobiskrug neither assembled nor otherwise integrated the Interior Outfit into the "bare ship" it contracted to provide.  It is noted further that Exxon was decided before Saratoga Fishing, 520 U.S. 875 (1997), and as in Petroleum Helicopters and Sea-Land, the separately

40

purchased defective spare parts were manufactured by the same company that produced the original parts.  By contrast, the present case does not involve a question as to whether defective spare parts are part of the relevant product, and CHMM bargained with parties other than Nobiskrug and Freeman for the Interior Outfit and other property that was added to the Vessel by CHMM.  Further, an Interior Outfit supplied at a cost in excess of $10,000,000.00 is not akin to interchangeable parts, particularly those intended to be replaced periodically as part of routine maintenance.

Accordingly, contrary to the findings in the district court below, there is no decision in the Supreme Court, Ninth Circuit, or any other court holding that tort recovery is not available for property installed by the purchaser to a vessel before its final delivery date.

## C.     Deciding What Constitutes the Relevant Product Requires a Factual Determination Precluding Dismissal at the Pleadings Stage.

Contrary to the district court's statements, extrinsic evidence is necessary to determine the relevant product and "other property" where, as here, there is a dispute concerning the meaning of contractual provisions.  Although <u>Exxon Shipping Co. v. Pac. Resources, Inc.</u>, predates the Supreme Court's decision in <u>Saratoga Fishing</u> (1997), the district court in <u>Exxon</u> admitted that:

> In determining what constitutes the product, the court looks first to the parties' contract.  Only when this inquiry proves insufficient does the

41

court look to extrinsic evidence.  This court has previously held that whether various components constitute a single, integrated product or separate and distinct products may require a factual determination.

835 F.Supp. at 1199.

If there was any dispute as to what is the relevant product in this case, then the district court was bound to take additional evidence to determine the relevant product and other property, something that properly could not be done in the context of a Fed. R. Civ. P. 12(b)(6) motion.  To the extent that a dispute exists at the motion to dismiss stage, the allegations should be construed in the light most favorable to CHMM, as discussed in Point I above.  However, the obligations under the Shipbuilding Contract have been discussed at length above in order to remove all doubt that the Interior Outfit was not part of the relevant product manufactured by Nobiskrug but was rather "other property."  Analysis of the contracts for the Interior Outfit clearly demonstrates that they contemplated the interior outfitting by CHMM of the "bare ship" supplied by Nobiskrug.  (Am. Compl. ¶¶ 7-9, ER 285.)  Indeed, the property comprising the Interior Outfit had nothing to do with the product and services provided by Nobiskrug.  The Interior Outfit included but was not limited to the electronics and interior furnishings of such spaces as the Owner's and VIP Accommodations, Guest Accommodations, and the Captain's Stateroom.  None of those components was supplied or installed by Nobiskrug, but all were instead purchased from and installed by third parties

42

with whom CHMM separately contracted. (Am. Compl. ¶ 10, ER 285.) Specifically, separate and distinct from the Shipbuilding Contract, CHMM negotiated with third parties for goods and services relating to the purchase, installation, and outfitting of items including but not limited to woodwork and furnishings (Ruiter Quality Interieurs B.V., hereinafter "Ruiter"), carpeting and furnishings (Bergers Interieurs B.V., hereinafter "Bergers"), and electronics (Advanced New Technologies Ltd., hereinafter "ANT"). (Pruzinsky Decl. ¶¶ 7-9, Ex. E, F, G, ER 122, 187-279.) The goods and services for the Interior Outfit were acquired by CHMM from these three third parties at the considerable expense of more than $10,000,000.00. (F&R 4, ER 7.) To say this was not "other property" only begs certain hypothetical questions such as whether a piece of fine art, say a Picasso painting, brought to the interior outfitters by CHMM for installation aboard the vessel would be part of the "product" purchased from Nobiskrug. (Mot. to Dismiss Hr'g Tr. 57, ER 103.) Clearly, that would not be the case.

As discussed in Point I(B) above, to the extent that the district court treated the Shipbuilding Contract and the contracts for the Interior Outfit as "coordinated transactions", (F&R 8, 14, ER 11, 17), that must be disregarded as an impermissible finding of fact. In this connection, the court below misconstrued its obligations in considering a 12(b)(6) motion to dismiss by expanding the scope of contract interpretation to include fact finding at the pleadings stage. In any event,

43

it is obvious that there was not a series of coordinated transactions leading to assembly of a fully outfitted yacht by Nobiskrug as the court below erroneously found, (F&R 10-11, ER 13-14), as evidenced by the tremendous amount of supplemental material submitted regarding the provision and installation of the Interior Outfit by CHMM's third party vendors. (Pruzinsky Decl. Ex. E, F, G, ER 187-279.)

Yet, the overarching problem with the district court's order is the erroneous assumption that the Supreme Court has created a bright line rule with respect to when other property added to a product can be the subject of a maritime product liability claim. As such, the court below erroneously assumed that, because this property was installed prior to manufacturer Nobiskrug's final delivery the Vessel, it had to be a subject of the purchase from Nobiskrug, even though it was installed by third parties without the participation of Nobiskrug, who contractually disclaimed all responsibility for the property or its installation. (Am. Compl. ¶ 7, ER 285.) In this connection, the installation of the Interior Outfit had no relation to either the sea trials subsequently conducted by Nobiskrug or the procurement of class certificates, (Dolan Decl. ¶¶ 6-7, ER 28). And to the extent Freeman contested this fact, the court below was bound to deny Freeman's motion and await completion of discovery in order to determine the relevant product and "other property."

44

**D.     Dismissal was Inappropriate in View of Relevant Questions Left Open by the Supreme Court.**

Equally important is that many questions have been left open in the two decisions of the Supreme Court relating to the economic loss rule.  In particular, the Ninth Circuit in All Alaskan questioned whether East River has an application where a "vessel … is sold in a commercial transaction where a warranty is not likely; and if East River does not apply in those circumstances, how the 'product' is to be determined."  All Alaskan Seafoods Inc. v. Raychem Corporation, 197 F.3d 992, 994 (9th Cir. 1999).  A similar issue is presented by the novel facts of the case at bar, to the extent that a manufacturer in Nobiskrug's position which has not supplied or sold an interior valued at more than $10,000,000.00 is unlikely to provide a warranty that would cover damage to it.

Further, Freeman does not dispute that there is no Freeman warranty before the Court that would be applicable to the weathertight door that was part of the "bare ship" for which CHMM contracted with Nobiskrug.  Moreover, the Shipbuilding Contract was to be governed by Swiss law, which provides no protection to Freeman as a supplier of the door.  As set forth in the Declaration of Anthony J. Pruzinsky:

> 5. To the extent that any warranties are set forth by the Shipbuilding Contract, it should be noted that Section 16 provides that:

This Contract shall be governed by and construed in accordance with the law of Switzerland, but ownership to the Yacht and the Builder's lien rights shall be governed by and construed in accordance with German Law.

In accordance with Fed. R. Civ. P. 44.1 "Determining Foreign Law," Plaintiff has submitted the expert declaration of Swiss Counsel, Sabrina Cellier of Stauffer & Associés, who has construed the provisions of the Shipbuilding Contract as well as Freeman's lack of standing to claim any benefit of the warranty provisions recited therein. …

6. Interpreting the Shipbuilding Contract under Swiss law, Ms. Cellier concludes that :

> 10. Therefore, notwithstanding the provisions of Clause 11.1(b) of the Shipbuilding Contract, it is my opinion that under Swiss law Freeman Marine Equipment, Inc. may not claim the benefit of any limitations or restrictions contained in the warranty provisions of the Shipbuilding Contract.

(Pruzinsky Decl. ¶¶ 5-6, ER 121.)

Therefore, to the extent that the district court felt compelled to evaluate the shipbuilding contract's treatment of suppliers like Freeman, the record provides that the warranty negotiated with Nobiskrug does not foreclose CHMM's right to pursue Freeman in tort.

## CONCLUSION

In light of the district court's failure to comply with the standards for

46

consideration of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and the fact that no other court had held that recovery is not available for property added by a purchaser to a vessel prior to its final delivery date, it is respectfully submitted that the district court was in error in dismissing CHMM's tort claims at the pleadings stage. Accordingly, CHMM respectfully requests that this Court reverse the Order entered by the district court on February 7, 2013, reinstate the First through Fifth Claims for damage to property place on board by CHMM and its contractors prior to the Vessel's delivery date, and remand for further proceedings on the merits. Alternatively, CHMM prays for such other, further, and different relief as the Court may deem appropriate in the premises.

Dated:       New York, New York
             August 15, 2013

                              Respectfully submitted,

                              HILL RIVKINS LLP
                              Attorneys for CHMM, LLC

                              By: s/ Anthony J. Pruzinsky
                              Anthony J. Pruzinsky
                              Brian P. R. Eisenhower
                              45 Broadway – Suite 1500
                              New York, New York 10006
                              (212) 669-0600
                              apruzinsky@hillrivkins.com
                              beisenhower@hillrivkins.com

## STATEMENT OF RELATED CASES

Appellant is not aware of any related cases pending before the Court of Appeals.

s/ Anthony J. Pruzinsky
Anthony J. Pruzinsky
Attorney for Plaintiff-Appellant
CHMM, LLC
Dated: August 15, 2013

**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements**

1.  This brief complies with the type-volume limitation of Fed. R. App. P.
    32(a)(7)(B) because:

    this brief contains 11,336 words, as counted by Microsoft Office Word,
    excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.
    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportionally spaced typeface using
    Microsoft Office Word in 14-point Times New Roman type.

<u>s/ Anthony J. Pruzinsky</u>
Anthony J. Pruzinsky
Attorney for Plaintiff-Appellant
CHMM, LLC
Dated: August 15, 2013

49

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August, 2013, I served the foregoing PLAINTIFF-APPELLANT'S OPENING BRIEF on:

> Edward J. Powers
> Vandeventer Black LLP
> 500 World Trade Center
> Norfolk, VA 23510-1617
> Facsimile: (757) 446-8670
> E-Mail: epowers@vanblk.com
>
> James P. McCurdy
> Lindsay Hart, LLP
> 1300 SW Fifth Avenue, Suite 3400
> Portland, OR 97201
> Facsimile: (503) 226-7697
> E-Mail: jmccurdy@lindsayhart.com

by delivering a true and correct copy thereof by electronic means via the Court's electronic filing system.

DATED this 15th day of August, 2013.

s/ Anthony J. Pruzinsky
Anthony J. Pruzinsky
apruzinsky@hillrivkins.com

50